Daniel Gr. Albebt, J.
At issue in this action, tried by the court without a jury at Special Term, is the defendant Morgan’s right to maintain and use a parcel of filled-in land measuring approximately 245 feet in length and 116 feet in width, extending from the high-water line across the foreshore and into the waters of Manhasset Bay.
The plaintiff owns and operates a restaurant in close proximity to this filled-in area, upon which the defendant Morgan operates a marina and snack bar. In this action, plaintiff seeks a mandatory injunction compelling the removal of the fill, and ancillary relief in the form of damages, predicated upon the claims that, by filling the area and using it as he does, the defendant Morgan is trespassing upon public land and interfering with plaintiff’s riparian rights.
In a cross complaint, the defendant Town of North Hempstead seeks similar injunctive relief, claiming that it is the owner of *281 the lands under the waters of Manhasset Bay. The town also claims that the fill placed by the defendant Morgan and the structures he has erected upon it violate its building zone ordinances.
The defendant Morgan contends, principally, that he has acquired title to the filled-in area by adverse possession or, alternatively, that creation, maintenance and exclusive use of the filled-in area is a lawful exercise of his riparian rights.
The land in question lies generally at the southerly terminus of Orchard Beach Road, formerly known as Bowman’s Point Road, in the Village of Manorhaven, in Nassau County. The following diagram of the area, while not drawn to scale, will, it is hoped, aid in understanding the parties’ contentions, the issues raised, and the court’s resolution of this dispute.

The defendant Morgan purchased the triangular piece of property (marked as “ M ” in the above diagram) in 1940. The' property was then, and is now, improved by a small frame residence. At the time he purchased the parcel, the southernmost ..tip of the triangle (point “ 2”) was 31.31 feet north of a bulkhead which marked the end of Bowman’s Point Road and *282 the then high-water line of Manhasset Bay. The area separating the defendant Morgan’s triangle from the bulkhead consisted then, as it does now, of paved roadway, the curb lines of which are shown by dotted lines on the above diagram, and the evidence shows that record title to the paved area is in the County of Nassau. Extending out into the bay from the bulkhead, to a distance of approximately 245 feet, was a 20-foot-wide dock, which had been constructed during the 1930’s as a terminal for the short-lived Port Washington-New Rochelle Perry Co., which also used the residence on the triangle as a ticket office.
The defendant Morgan acquired title to the triangular plot by a deed from Grace Stevenson, dated July 2, 1940. Insofar as pertinent, that deed, in setting forth the bounds of the grant, described the line indicated in the above diagram as extending from point “ 2 ” to point “ 3 ”, as lying “ along the high-water mark of Manhasset Bay”. The deed to Stevenson, defendant Morgan’s predecessor, executed by the Referee in a foreclosure proceeding against the ferry company, similarly described one boundary of the property as lying £ ‘ along the high water mark of Manhasset Bay ”, and also included in the grant the following : £ ‘ Also all the right, title and interest of the Mortgagor in and to the sand bar and land lying below high-water mark and under the waters of Manhasset Bay and adjoining1 the piece of land herein conveyed. ’ ’
According to the defendant Morgan’s testimony, shortly after he acquired title to the parcel described above, he constructed a fence from point “2” in the above diagram south to the bulkhead. Apparently, he relied then on the language in the deed (quoted supra) as a conveyance to him of title to the paved area east of Bowman’s Point Road as far south as the bulkhead line.
Sometime thereafter, he covered the old ferry dock with concrete and, for a tiihe, operated a fishing station and snack bar on a barge tied to the end of the dock.
The exact time when defendant Morgan began and completed the filling operations to the east and to the west of the dock is the subject of conflicting evidence and will be dealt with later in this decision.
At this point, however, several of the parties’ contentions centering about the doctrine of riparian rights can be discussed and disposed of. As indicated earlier, the plaintiff (which owns and operates a restaurant on the parcel marked “ A” in the diagram, supra) claims that by filling beyond the high-water *283 mark the defendant Morgan has interfered with plaintiff’s riparian rights. As part of this claim, plaintiff contends that the fill and the structures thereon obstruct the view" of the bay which its patrons formerly enjoyed, that the fill has reduced, if not entirely eliminated, the tidal flow of waters in the foreshore south of plaintiff’s property, and that the defendant’s Morgan’s admittedly unauthorized extension of a county drainpipe (see diagram above) which formerly terminated at the ferry dock is depositing matter which gives off noxious odors in front of plaintiff’s restaurant.
Similarly, as indicated earlier, the defendant Morgan contends that the southern boundary of the parcel he purchased was the high-water line of Manhasset Bay and that his filling activities were a lawful exercise of his riparian rights.
In this court’s opinion, both of these parties are misinterpreting the meaning and extent of the doctrine of riparian rights.
The foreshore, the land lying between the high- and low-water marks of navigable waters, is subject to the rights of several classes of persons.
First, there is the jus publicum: the right shared by all to navigate upon the waters covering the foreshore at high tide and, at low tide to have access across the foreshore to the waters for fishing, bathing or any lawful purpose (Barnes v. Midland R. R. Term. Co., 193 N. Y. 378, 384). Second, there is the jus privatum: the right of the owner of the foreshore. Originally, this right was peculiar to the King of England who, in his individual capacity, held title to all land under navigable water throughout his kingdom as his private property (Commonwealth v. Alger, 7 Cush. 53, 82, 90; Lewis Blue Point Oyster Cultivation Co. v. Briggs, 198 N. Y. 287, 291). When ownership of this land, as is usually the case, is vested in a governmental authority, it is said to hold title in trust for the public good, with the right to control and regulate commerce and navigation thereon, as well as fishing or bathing, subject to the jus publicum (Town of Brookhaven v. Smith, 188 N. Y. 74, 78). When the owner of the adjacent upland acquires title to lands under navigable waters, he may fill in such lands, making upland out of the foreshore, and thus extinguish the jus publicum (Wetmore v. Brooklyn Gas Light Co., 42 N. Y. 384; People v. Steeplechase Park Co., 218 N. Y. 459, 476), subject to the right of the sovereign to make public improvements upon tidewater for the benefit of commerce (Lewis Blue Point Oyster Cultivation Co. v. Briggs, supra, pp. 292-293; Sage v. Mayor, etc. of City of N. Y., 154 N. Y. 61, 79).
*284 Third, there are the rights of the riparian owner, the owner of upland fronting on navigable tidal waters. Plaintiff is such an owner; "and, for the limited purpose of discussion of this issue, the court will assume that defendant Morgan enjoys a similar status, although as indicated earlier, defendant Morgan’s triangular plot is separated from the bulkhead marking the high-water line by approximately 30 feet of what purports to be a county road.
In any event, the riparian rights of an upland owner are the rights of reasonable, safe and convenient access to the water for navigation, fishing or similar purposes (Town of Brookhaven v. Smith, supra; Tiffany v. Town of Oyster Bay, 234 N. Y. 15, 21). Nothing that defendant Morgan has done interferes with plaintiff’s riparian rights. Nothing that defendant Morgan has done, in terms of filling and building upon the fill, is a lawful exercise of his own riparian rights. That doctrine, therefore, has nothing to do with this case.
The balance of plaintiff’s complaint can also be disposed of at this point. Plaintiff certainly has no easement for an unobstructed view from its restaurant across the bay, and its proof upon the trial of this case fell far short of establishing any compensable damage to the value of its real estate or business by virtue of defendant Morgan’s activities. The judgment to be granted herein, therefore, will dismiss plaintiff’s complaint, with prejudice but without costs.
The true controversy herein lies between the codefendants. It yas established in Grace v. Town of North Hempstead (166 App. Div. 844, affd. 220 N. Y. 628) that title to the land beyond the high-water line of Manhasset Bay is vested in the defendant Town of North Hempstead, as successor to the Town of Hemp-stead (L. 1784, ch. 21) which acquired title by a Dutch colonial grant in 1644 and a similar English patent granted in 1685.
The defendant Morgan concedes that the defendant town was so vested with title. However, he contends that title to the portion of the underwater land upon which he has placed the fill is now in him by virtue of his possession thereof adverse to the interest of the town. The town argues that there is no prescriptive right against a governmental authority, citing Cotrone v. City of New York (38 Misc 2d 580). However, that rule is only applicable where the property of the municipality is unalienable; that is, where the municipality lacks the power to convey title by express grant (City of New York v. Wilson & Co., 278 N. Y. 86; Matter of City of New York [Cons. Gas Co.], 217 N. Y. 1; People v. Vanderbilt, 26 N. Y. 287). “ The whole theory of prescription depends upon a supposed grant. No such *285 grant can be presumed where a grant would be unlawful or contrary to law. * * * Where no express grant can be allowed, the law will not resort to the fiction of an implied grant so as to create a prescriptive right ” (Burbank v. Fay, 65 N. Y. 57, 66-67).
The land involved herein, however, is alienable (cf. Long Is. Land Research Bur. v. Town of Hempstead, 203 Misc. 619, affd. 283 App. Div. 663, affd. 308 N. Y. 818; Riviera Assn. v. Town of North Hempstead, 52 Misc 2d 575) and, therefore, since the town could divest itself of title by an express grant it could also lose title by prescription.
The defendant Morgan testified that he started to fill the area in dispute in 1951, working first on the easterly side of the dock. He claimed that by 1953, he had filled an area measuring approximately 40 by 117 feet immediately to the east of the dock and that he completed the easterly portion to its present length of 245 feet in 1958. He also testified that he started to fill beyond Bowman’s Point Road, to the west of the dock, in 1958 and completed that side in 1965.
On the basis of this testimony, defendant Morgan’s counsel argues that, since he had occupied a part of the disputed land “ under color of title ” more than 10 years prior to the commencement of this action in October, 1968, he acquired title to the whole of it by constructive possession thereof.
The argument is fallacious for several reasons. It is not necessary to consider the effect of Morgan’s “partial possession ” at any great length. First, he has no deed purporting to convey to him the whole of the filled-in area, and such a written instrument is necessary before it can be said that actual possession of a part is constructive possession of the whole (Donohue v. Whitney, 133 N. Y. 178, 183). The reason for requiring a written instrument describing the bounds of the locus in quo is obvious. Without it, how would a court determine the limits of the constructive possession? If defendant Morgan prevailed on this theory, there would be nothing save the limits of their energies and ambitions to bar Morgan and his successors from filling in all of Manhasset Bay.
Furthermore, Morgan’s claim that he had filled a substantial portion to the east of the dock by 1953 is disputed by other testimony and, in the court’s opinion, completely refuted by an aerial photograph of the area, taken in January, 1957, showing a much smaller portion of fill to the east of the dock.
Finally, the court is of the opinion that the applicable Statute of limitations governing the period during which Morgan’s possession of any part of the filled-in area could ripen into title *286 covering isuch part is not the 10 years specified in CPLB 212 (subd. [a]) which became effective September 1,1963, but the 15 years required by section 34 of the Civil Practice Act, which was in effect when Morgan commenced his adverse possession (Reiter v. Landon Homes, Inc., 31 A D 2d 538, 539). This court finds no satisfactory evidence that defendant Morgan had occupied any portion of the filled-in parcel prior to October, 1953. The defendant Morgan’s own testimony to that effect is, in the court’s view, discredited by the other evidence in the case, particularly the aerial photograph referred to supra.
Nor is the town’s cause of action for trespass barred by the six-year Statute of Limitations set forth in CPLB 213 (isubd. 1), since an unlawful encroachment is a continuous trespass giving rise to successive causes of action which are barred only by the passage of such time as would effect a change of title or easement by prescription (509 Sixth Ave. Corp. v. New York City Tr. Auth., 15 N Y 2d 48, 52).
Finally, the court is of the opinion that the defendant town, having moved to protect its interest by means of a cross complaint within the applicable statutory period of limitations, is not to be denied relief on the ground of laches, since the relief sought is a matter of right and not purely an application to the favor or discretion of the court (cf. Coit v. Campbell, 82 N. Y. 509, 514; Pollitz v. Wabash R. R. Co., 207 N. Y. 113, 129-130).
One other aspect of this litigation must be disposed of. Since record title to the land lying between the defendant Morgan’s triangular parcel and the former bulkhead line marking the high-water line of Manhasset Bay is in the County of Nassau, which is not a party to this action, the court is not making any determination relative to the county’s rights therein or the defendant Morgan’s claims thereto.
In summary, in the judgment to be entered herein the court will:
(1) dismiss the plaintiff’s complaint, with prejudice but without costs ;
(2) dismiss the counterclaim of the defendant Morgan based on plaintiff’s alleged slander of his title, with prejudice but without costs to plaintiff ;
(3) dismiss so much of the defendant town’s cross complaint as seeks damages, since there was no proof of same; and
(4) grant so much of the defendant town’s cross complaint, with costs, as seeks injunctive relief directing the defendant Morgan to remove the fill encroaching upon the town’s land. In the event said defendant fails to remove the encroachment within a reasonable time after entry of judgment, which period shall *287 be specified in the judgment, the defendant town will be given leave to remove it and apply to this court for a money judgment against the defendant Morgan for the expenses involved.