[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This is a dispute about a right-of-way. The plaintiffs, Joseph and Ann Sgrignari ("the Scrignaris" or "plaintiffs") have brought suit against the defendants, Michael and Carolyn Vallone ("the Vallones" or "defendants").
The plaintiffs' Second Amended Complaint is in six counts, the first alleging trespass; the second, nuisance; the third, misuse of easement; the fourth, overburdening of the easement; the fifth, invasion of privacy; the sixth, intentional infliction of emotional distress.
The defendants answered, denying wrongdoing, raising a special defense to each of counts one through four, and filing a counterclaim. The counterclaim is in eight counts, the first alleging trespass; the second nuisance; the third, invasion of privacy; the fourth, intentional infliction of emotional distress; the fifth, negligent infliction of emotional distress; the sixth, violations of restrictive covenants; the seventh, obstruction of right of way; the eighth, breach of contract. The plaintiffs replied, denying any liability, raising special defenses to each count of the counterclaim and denying the defendants' special defenses.
Each side seeks injunctive relief, monetary damages, including exemplary and punitive damages, attorney's fees and costs, as against the other side. CT Page 5547
A hearing opened on December 10, 1998, continued on December 11th, December 14th, December 15th of 1998, January 13th, January 14th, January 15th, 1999, and to January 19, 1999, when the parties rested.
 II
The Sgrignaris and the Vallones own adjoining property in a three-lot subdivision on Spring Street in the Town of Cheshire. The Sgrignaris' property is designated as Lot #2, and the Vallones' as Lot #3, on a map entitled "Map Showing Subdivision of Property of the Estate of Helen I. MacDonald, Applicant, (Thomas J. Norbach and Sarah J. Mueller), Spring Street, Cheshire, Conn. Scale 1" = 40', November 15, 1991", on file in the Cheshire land records. The third lot of the subdivision, designated lot #1, is owned by John and Nancy Lemkin. Lot #1 is adjacent to Spring Street on the south. Lot #2, adjacent to Lot #1's northern boundary, and Lot #3, adjacent to Lot #2 `s northern boundary, are landlocked, accessible only by a right of way.
The three lots are subject to a "Declarations of Easements, Covenants and Restrictions", dated September 23. 1992, and recorded in Vol. 935, p. 241 of the Cheshire Land Records (Plaintiffs' Exhibit B). The stated purpose of this right of way is:
 ". . . to grant the new or future owners of Lots No. 1, 2 and 3 as shown on the within described map, their heirs, legal representatives, successors and assigns the right of way at all times in common with the now and future owners of Lot Nos. 1 and 2, as shown on said map, their heirs, legal representatives, successors and assigns over the area of said right of way for general road and utility purposes and for purposes of vehicular and pedestrian ingress to and from Lot Nos. 2 and 3."
This easement ("the 50' right of way") is fifty feet in width, running north-south across Lots #1 and #2, along their western boundary. There is presently within the said right of way a paved drive, extending north from Spring Street, across Lots #1 and #2, to a turnaround ("the cul-de-sac"), located on Lot #2, and thence crossing a vehicular bridge located within the confines of Lot #2, to the property line of Lot #3, adjacent to Lot #2. The paved drive is approximately fifteen (15) feet in CT Page 5548 width from Spring Street to the cul de sac, narrowing thereafter to approximately eleven (11) feet as it crosses the bridge and reaches the Vallones' property. A stream flows from the southeast corner of the Vallones' property across the northern portion of the Sgrignaris' land, crossing the latter in a diagonal running northeast to southwest. Thus, a strip of land belonging to the Sgrignaris lies between the stream and the Vallones' southern property line.
There is an additional easement, for utility purposes, recorded on the Cheshire land records, titled "A Declaration of Easement", dated March 9, 1995, and recorded in Vol. 1095, p. 247 (Plaintiffs' Exhibit C).
The Lemkins were the first to occupy premises on their property, Lot #1. Next in time were the Sgrignaris, who purchased and occupied their dwelling on Lot #2, designated as 408 Spring Street, in March, 1995.
At the time of purchase, the Sgrignaris understood that their access to Spring Street was by use of the fifty foot right of way across Lot #1, and that when a residence was built on Lot #3, that access to that residence would be across both Lots #1 and #2 within the said right of way.
In the summer of 1996, the defendants Vallone purchased and took up residence on Lot #3, designated as 410 Spring Street.
 III
In September, 1996, Mr. Vallone asked Mr. Sgrignari for permission to plant a row of evergreen trees on the Sgrignari side of the property line, north of the brook and expressed his desire to maintain the lawn north of the brook. Sgrignari agreed to allow Vallone to plant the trees and to mow said strip of lawn north of the stream. A row of 10 trees was subsequently planted on the Sgrignari side of the property line and Vallone undertook to mow the land north of the stream. During the ensuing months Vallone approached Sgrignari with additional proposals. He wished to install guardrails on the bridge; this was agreed to and done. He wished to clear the stream bed of brush or overgrowth; whether Sgrignari agreed to this is disputed but Vallone did some clearing in the stream bed, located on the Sgrignari land. Vallone asked to plant additional trees between the cul de sac and the bridge, but Sgrignari would not agree. CT Page 5549
In the Spring of 1997, Vallone again commenced mowing. Now he was mowing the entire area north of the stream as well as a small strip in the right of way on the west side of the driveway. By May of 1997, Vallone decided to mow a section of the right of way south of the cul de sac to improve the appearance of the right of way. Vallone felt he was doing everybody a favor by so doing. By now, relations between the two men were strained and it appears that this was done without notice to, and without seeking agreement from, the Sgrignaris.
On or about May 20, 1997, Sgrignari approached Vallone and told him that he did not want Vallone to continue any maintenance on the Sgrignari property and that he wanted the trees planted previously to be removed. Sgrignari gave Vallone 30 days to remove the trees and offered Vallone two hundred dollars; the discussion ended in acrimony. A few days later, Vallone approached Sgrignari to apologize and continue the discussion. He told Sgrignari he would no longer mow in the right of way and that Vallones's landscaper had said that removing the trees now would kill them and it would be better to wait until the Fall to do so. This meeting ended amicably. Shortly thereafter, Sgrignari drafted a proposed agreement contemplating continued presence of the trees and submitted it to the Vallones for their consideration.
On June 1, 1997, Vallone again entered the right of way and began mowing grass. The Sgrignaris called the police, who responded twice on that day.
June 14, 1997, Mr. Vallone returned home to find that Mr. Sgrignari had removed the row of trees. The Vallones called the police to complain.
The pattern was now set and relations between the parties continued to deteriorate. On various occasions the police were called by one side or the other. During the summer months of 1997, Mr. Vallone continued to mow sections of the lawn in the right of way south of his property line.
It serves little purpose to recount each and every encounter. The Sgrignaris claim that Vallone constantly directed comments, obscenities, gestures, stares and glares at Sgrignari whenever the latter was working on his land north of his house; that Vallone drove a "dirt bike" at a high rate of speed along the CT Page 5550 right of way; that Vallone receives an inordinate number of home deliveries from UPS by virtue of running a business from his home; that the Vallones and their guests used areas of the right of way for parking vehicles. The Vallones claim that Sgrignari yelled at Mrs. Vallone, "Go home! ", as she walked in the right of way; that Sgrignari sought to entrap Mr. Vallone through surreptitious use of a video camera; that Sgrignari suddenly stepped in front of a motor vehicle driven by Mrs. Vallone; that on another occasion, Sgrignari attempted with his vehicle to run Mr. Vallone off the road; that on another occasion Sgrignari stepped into the path of Mrs. Vallones's bicycle, that on one evening during the trial Sgrignari drove a vehicle onto the Vallones' property, beaming his headlights into the Vallone residence.
However, certain incidents are worthy of note: on August 15, 1997, Mr. Sgrignari sought to delineate the property line between the two lots by mowing along the line with blades set as low as possible. Vallone and Sgrignari got into an argument and Sgrignari crossed onto Vallone's property to continue the argument. This incident elicited another call to the police and is one basis for the Vallones' claim of trespass against the Sgrignaris.
The Sgrignaris' claim of trespass against the Vallones includes allegations that the Vallones' agent, ChemLawn, applied chemicals to parts of the Sgrignaris' property, and continued to do so into the Spring of 1998.
In October, 1998, Sgrignari spread mulch over an area of the right of way and erected a wooden fence along the east side of the paved drive from the cul de sac to the Vallones' property line.
 IV
The first count of the Sgrignaris' complaint alleges trespass against Michael Vallone in that on numerous occasions from on or about March, 1997, Vallone unlawfully entered upon the right of way, not for the purpose of ingress and egress, but for the purpose of mowing, cutting and trimming the Sgrignaris' lawn and brush. The first count of the Vallones' counterclaim alleges trespass by Joseph Sgrignari in that on or about September 5, 1997, September 18, 1997 and September 29, 1997, Sgrignari unlawfully entered upon the property of the Vallones for the CT Page 5551 purposes of harassing and threatening the Vallones. Both parties seek damages and an injunction against the other.
The essentials of an action for trespass are: ownership or possessory interest in land by the plaintiff; invasion, intrusion or entry by the defendant, affecting the plaintiff's exclusive possessory interest; done intentionally; and causing direct injury, Avery v. Spicer, 90 Conn. 576, 579; 75 Am.Jur.2d, Trespass, Sections 3, 8, 14, 25, 35.
Some damage necessarily follows any wrongful invasion of another's property, Matto v. Dan Beard, Inc., 15 Conn. App. 458,489.
Where both damages and an injunction are sought both title to the disputed area and possession are placed in issue, WadsworthRealty Co. v. Sundberg, 165 Conn. 457, 461.
Certain facts are undisputed. The plaintiffs Sgrignari are owners of Lot #2 and the defendants Vallone are owners of Lot #3. Title and possession are not at issue. The Vallones hold an easement crossing the Sgrignari' property for purposes of ingress from and egress to Spring Street and a second easement for "utility purposes," also crossing the Sgrignari's land.
Because the trespass claims of the parties involve, interalia, actions of the other side within the said easement limits, such claims must be reviewed with reference to the law of easements. An easement is an interest in land possessed by another which entitles the easement owner to a limited use or enjoyment of the land in which the interest rests; entitles the easement owner to protection as against third parties from interference in such use or enjoyment; and is not subject to the will of the possessor of the land, Restatement (Second) Property
S 450 (1944). A right of way is primarily a privilege to pass over another's land, Tiffany Real Prop. , Section 772 (3rd Ed.).
The owner of land over which an easement has been granted has, by law, all the rights and benefits of ownership consistent with the existence of the easement, Center Drive-in Theater, Inc.v. City of Derby, 166 Conn. 460. The owner of an easement has all the rights incident or necessary to its proper enjoyment, but nothing more, Id., at 464. One having a mere right of way does not have such possessory right as would entitle him to maintain an action of trespass against persons entering the property CT Page 5552 subject thereto, Great Hill Lake v. Caswell, 126 Conn. 364, 367.
To determine the character and extent of the easements at issue, the court must look to the language of the deed, the situation of the property and the surrounding circumstances in order to ascertain the intention of the parties, Hall v.Altomari, 19 Conn. App. 387, 390.
The stated purpose of the right of way established in the "Declarations of Easements, Covenants and Restrictions" recorded in Volume 935, page 241 of the Cheshire Land Records, is, [as to the parties] to grant the Vallones a right of way over the Sgrignaris' land for "general road and utility purposes and for purposes of vehicular and pedestrian ingress to and from" the Vallone's property. A condition of this easement is that the owners of Lots #1, #2, and #3 "share in the repair, maintenance, sanding and removal of snow from the improved areas of the right of way . . ."
The court finds that the intent of the grantors was strictly to limit the Vallones' use of the right of way to ingress from and egress to Spring Street by vehicles and pedestrians [as well as allowing for needed utility service lines]. The easement does not allow parking by the Vallones, their guests or agents, in the right of way, nor does it bestow on the Vallones, absent an invitation from the Sgrignaris, the right or duty to come on the Sgrignaris' land to mow grass or engage in landscaping nor clearing of brush or undergrowth in the stream bed, within or without the bounds of the said right of way. The obligations of the Vallones include reasonable use of said right of way for the purpose stated and payment of their share of the cost of maintenance, sanding and removal of snow from the improved areas of the right of way, as stated in the declaration of easement. Should such reasonable use cause damage to the right of way, a duty could arise in the holders of the right of way to make such repairs as are necessary to restore the land to its previous condition. Such would also be the case where the holders of the right of way disturbed land within the right of way in order to effect needed repairs to utility service lines serving their property, Lakeview Associates v. Woodlake Master CondominiumAssociation, Inc., 239 Conn. 769.
"Maintenance" in the context of this easement has no aesthetic component; it does not refer to maintaining the right of way by mowing or landscaping. Insofar as the testimony of CT Page 5553 Thomas Norbach is to the contrary, the court finds it unpersuasive. The terms of the easement are to be read as keeping the paved portion and its shoulders, ("the improved areas")of the 50' right of way in repair so as to allow such ingress and egress.
The Vallones' right to use the right of way for ingress and egress is to be exercised with the minimum intrusion on the property rights of the Sgrignaris. Accordingly the Vallones are to restrict their vehicular ingress and egress to the paved portion of the 50' right of way, and, for pedestrian use only, the area within ten (10) feet of either edge of the said paved area.
The Sgrignaris, as owners of the land, are entitled to do with it as they wish, within the law, so long as they do not interfere with the Vallones' vehicular and pedestrian ingress and egress, and the maintenance of utility service to the Vallones. Thus, the Scrignaris are free to cut the grass on their land, low or high, or let it revert to a wild state, to cut, or "scald", the grass down to the dirt, to allow weeds and grass to grow several inches high, to place grass clippings and mulch in the unpaved areas of the right of way, and to spray weed killer on the unpaved portions of the right of way. The Sgrignaris are responsible for maintaining the stream bed so as to prevent damage to the Vallone's property. The Sgrignaris are not allowed to erect any fences, structures or plantings in the right of way which interfere with the use by the Vallones of the right of way for ingress and egress.
Misusing the easement is a form of trespass in that it interferes with the land's owners' possessory rights. Based on the evidence and testimony presented, the court finds, by a fair preponderance of the evidence, that the defendant Michael Vallone, from June, 1997 until some time in 1998 repeatedly intruded into both easements' limits to mow grass and that his agent, a lawn maintenance company, similarly intruded, during this period and, in addition, spread chemical fertilizer within said easements. Such conduct was intentional and affected the possessory rights of the plaintiffs and occasioned "some damage",Matto v. Dan Beard, supra, at 489. The court finds that such conduct constituted trespass and should be enjoined. Vallone's claim that he believed he had a right and a duty so to act is unavailing; bad advice is no defense. CT Page 5554
Since the Vallones have only a right of way over the Sgrignari' land, the former can only claim trespass by the Sgrignaris by virtue of the latters' intrusion on the Vallones' Land, Lot #3. Such an intrusion did take place, on August 15, 1997, when Joseph Sgrignari, in the course of an argument with Michael Vallone, entered on the Vallones' property and approached the Vallones. Such conduct, absent an invitation, constitutes trespass and will be enjoined.
 V
The plaintiffs and defendants allege nuisance by the other side. To establish a nuisance, four elements must be proven: (1) The condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) The danger created was a continuing one; (3) The use of the land was unreasonable or unlawful; (4) The existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages,Filisko v. Bridgeport Hydraulic Company, 176 Conn. 33, 35-36.
In Count Two of their Complaint the Sgrignaris allege nuisance in that on numerous occasions, beginning in May of 1997, Michael Vallone operated a "dirt bike" within the right of way recklessly and at an excessive rate of speed; and that the Vallones have utilized their property, including the easement area for business or commercial purposes, which required the frequent use of the right of way by commercial vehicles for ingress to and egress from the Vallones' property. Reckless and high speed operation of a motor vehicle in the right of way by the Vallones would be a misuse of the easement, as would operating a motor vehicle in the unpaved portion of the right of way. However, the plaintiffs have failed to establish their claims of nuisance by a fair preponderance of the evidence.
In the Second Count of their Counterclaim, the Vallones allege nuisance by reason of various actions of Joseph Sgrignari within the bounds of the right of way. The claims subsumed under the heading nuisance, are without merit and based on a flawed concept. This is reflected in the allegation that Joseph Sgrignari "entered upon the right of way, [across his, Sgrignari's, land] not for the stated purpose of egress to andfrom his property, (emphasis added) but for the express purpose of harassing. . . ." Sgrignari, the landowner, was not so restricted in his entry into the right of way, and the conduct complained of, mowing a deep cut along the boundary line, CT Page 5555 clearing the area with pick and shovel, allowing grass and weeds to grow several inches high, "scalding" the grass, spraying weedkiller, dumping grass clippings, placing mulch on the clippings, was not unlawful, created no danger, and caused the Vallones no injuries or damages, and did not impede the Vallones' proper use of the right of way. The Vallones have failed to establish their claims of nuisance by a fair preponderance of the evidence.
 VI
Count Three of the complaint alleges misuse of the easement in that the defendants have allowed and permitted motor vehicles to be parked within the paved portion of the aforesaid easement area. The court find, that the plaintiffs have established, by a fair preponderance of the evidence that the Vallones, their guests and their agents have on occasion parked motor vehicles on the paved portion of the right of way, and that such conduct is a misuse of the easement, being beyond the stated purpose of said easement. Such conduct will be enjoined. Count Three, alleging overburdening of the easement by virtue of the conduct alleged in Count Four, is stricken as superfluous and redundant.
 VII
The Sgrignaris, in Count Five of their complaint and the Vallones, in the Third Count of their Counterclaim, allege invasion of privacy. The tort of invasion of privacy was recognized as a cause of action by Connecticut's Supreme Court inGoodrich v. Waterbury Republican-American, Inc., 188 Conn. 107,127. In so doing, the court noted that the law of privacy has developed as a complex of four distinct kinds of invasion of four different interests of the plaintiff, having almost nothing in common except that each represents an interference with the right of the plaintiff to be let alone, Id., at 127-28 (citation, quotation marks omitted). The parties' claims here are of "unreasonable intrusion upon the seclusion of another", Id., at 128. One who intentionally intrudes, physically or otherwise, upon the seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the actions would be highly offensive to a reasonable man, Inre State Police Investigation, 888 F. Sup. 1235, 1252 (D. Conn. 1995) (citations, quotation marks omitted). Neither the plaintiffs nor the defendants have established, by a fair preponderance of the evidence, that the other side's conduct CT Page 5556 constituted invasion of privacy.
The Sgrignaris, in Count Six of their Complaint allege intentional infliction of emotional distress. The Vallones, in the Fourth Count of their Counterclaim allege intentional infliction of emotional distress and in their Fifth Count allege negligent infliction of emotional distress.
To prevail on a claim of intentional infliction of emotional distress, "the tort of outrage", Pfannenstiel v. OsbornePublishing Company, 939 F. Sup. 1497, 1505 (D. Kan. 1996), a plaintiff must show (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe,Petyan v. Ellis, 200 Conn. 243, 253 (citations omitted) Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind, Id., at 254, n. 5 (citation, quotation marks omitted).
". . . The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities", Hiers v. Cohen, 31 Conn. Sup. 305, 308-09, quoting from 1 Restatement (Second) Torts, S.46. The test, then, is objective; my scowl may cause you exquisite emotional distress, but would not support a claim of intentional infliction of emotional distress. So it is here. While the court is persuaded that various actions of each side caused distress to the other, the words and actions alleged by the plaintiffs do not support a claim of intentional infliction of emotional distress against the defendants, nor do the words and actions alleged by the defendants against the plaintiffs support such a claim
Similarly, the defendants' claim of negligent infliction of emotional distress must fail. To establish such a claim a plaintiff has the burden of proving that the defendant should have realized that his conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm, Parsons v. UnitedTechnologies Corporation, 243 Conn. 66, 88.(citations, quotation marks omitted). The measure of "outrageousness" required remains CT Page 5557 the same. The Vallones have failed to establish, by a fair preponderance of evidence that Joseph Sgrignari's conduct constituted negligent infliction of emotional distress.
The Sixth Count of the Vallones' Counterclaim is headed "Violations of Restrictive Covenants" and alleges that pursuant to the "Declarations of Easements, Covenants and Restrictions" the Sgrignaris are obligated to pay their portioned share of the cost of the "repair, maintenance, sanding and removal of snow from the improved areas of the right of way . . ."; that "on diverse occasions beginning on or about December 31, 1997, the defendants have incurred costs and expenses for repairs, maintenance, sanding and snow removal from the right of way for which the plaintiffs have failed, neglected and refused to reimburse the defendants." The court finds that the defendants Vallone have established this claim by a fair preponderance of the evidence and will order the Sgrignaris to reimburse the Vallones the sum of seventy two dollars for the cost of snow removal on December 15, and 31 of 1997, and January 23, 1998.
The Seventh Count of the Counterclaim alleges that the Sgrignaris have obstructed the right of way by erecting a fence along the side of the paved portion of the right of way from the cul de sac to the defendants' property line. The court finds that the defendants have established this claim by a fair preponderance of the evidence and will order the plaintiffs to remove said fence and to refrain from erecting any obstruction in the right of way. The defendants' claim of obstruction by failure to remove tree limbs or branches from the right of way was not established.
The Eighth Count of the Counterclaim alleges breach of contract by the plaintiffs in that having verbally agreed to allow the defendants to plant a row of ten trees on the plaintiffs' property, so as to provide a visual buffer between the two properties, and the defendants, in reliance on the said agreement, having `purchased and planted ten trees, the plaintiff Joseph Sgrignari, in June, 1997, cut one tree and ripped up the others, in breach of the agreement. The court finds that the defendants have failed to establish their claim of breach of contract. There was no contract. The Sgrignaris merely gave the Vallones permission to plant trees on the Sgrignaris' land. Once the defendants had planted said trees on the plaintiffs' land, said trees belonged to the plaintiffs and were theirs, to do with what they would. There was no clause in the agreement binding the CT Page 5558 plaintiffs to retain said trees for any period of time; there was no agreement to share the cost of said trees. There was no breach of contract.
 VII
Accordingly, judgment may enter in favor of the plaintiffs, the Sgrignaris, and against the defendants, the Vallones, on Count One and Count Three of the Complaint.
On the Counterclaim, judgment may enter in favor of the defendants, plaintiffs on the counterclaim, the Vallones, and against the plaintiffs, defendants on the Counterclaim, the Sgrignaris, on the First Count, Sixth Count and Seventh Count.
The plaintiffs Sgrignari are awarded nominal damages in the amount of one dollar ($1.00)
The defendants Vallone are awarded total damages in the amount of seventy three dollars ($73.00), including nominal damages in the amount of one dollar ($1.00) on the First Count and Seventh Count of the Counterclaim and actual damages of seventy two dollars ($72.00) on the Sixth Count.
No other damages, costs or attorney's fees are awarded.
The court concludes that a permanent injunction is warranted and enjoins the parties permanently as follows:
1. The defendants Vallone, their guests, servants, employees, licensees and invitees, are enjoined from using their easements over the plaintiffs' property (Lot #2) for any purpose other than pedestrian and vehicular ingress to, and egress from their residence, and for utility service.
2. The defendants, their agents, servants, employees, licensees and invitees, are enjoined from entering upon the easement areas for the purpose of mowing, cutting, trimming, chemically treating or otherwise maintaining the lawn and brush within said easement areas or elsewhere on the land of the plaintiffs.
3. The Vallones' use of the 50' right of way for ingress and egress is restricted to the paved portion of said right of way, for vehicles, and for pedestrian use, the area adjacent to the CT Page 5559 paved portion, not to exceed (10') feet in width.
4. The plaintiffs Sgrignari are enjoined from entering the property of the defendants for any purpose, except by invitation.
5. The defendants, their agents, servants, employees, licensees or invitees, are enjoined from utilizing the easement areas for the purpose of parking motor vehicles.
6. The defendants, their agents, servants, employees, licensees and invitees, are enjoined from entering the easement areas for the purpose of utility service repairs without prior notice to, and permission from the plaintiffs, which permission shall not unreasonably be withheld. The defendants are responsible for restoration of any portion of the easement disturbed by such repairs to the condition it was in prior to effecting such repairs.
7. The plaintiffs Sgrignari, their agents, servants, employees, licensees and invitees, are enjoined from obstructing the easements owned by the defendants and to that end are directed to remove the fence installed from the cul de sac to the defendants' property line, and the plaintiffs are enjoined from erecting any fence, wall, barrier, structure or obstruction within the said easement areas without the further order of this court.
8. The plaintiffs are directed to remove promptly any temporary obstructions from the paved portion of the easement traversing their property, including tree limbs or branches. The defendants, their agents, servants, employees, licensees or invitees, are authorized, should they encounter such obstructions while using the right of way, to remove such obstructions to the shoulder of the paved portion of the right of way, in a manner which minimizes any damage to the land.
9. The parties are directed to arrange for snow removal, sanding and effecting any repairs necessary to allow use of the paved roadway for pedestrian and vehicular ingress and egress, and the parties are enjoined from failing to pay their proportionate share of the costs of such maintenance, as set forth in the "Declarations of Easement, covenants and Restrictions" appertaining to the subject properties.
The parties are directed at all times to act in good faith CT Page 5560 and with common sense in complying with this injunction and seeking to effect its terms.
By the Court
Downey, J.